# UNITED STATES DISTRICT COURT

__NORTHERN__ DISTRICT OF __ILLINOIS, EASTERN DIVISION__

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | **FILED** | CRIMINAL COMPLAINT |
| v. | 6-25-08 | MAGISTRATE JUDGE KEYS |
| DANIEL RODRIGUEZ | JUN 2 5 2008 | CASE NUMBER: |
| | MICHAEL W. DOBBINS<br>CLERK, U.S. DISTRICT COURT | **08 CR 509** |

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __June 24, 2008__ in __Will__ County, in the __Northern__ District of __Illinois__, and elsewhere, defendant(s) did,

> knowingly possess with intent to distribute a controlled substance, namely, 50 grams or more of mixtures containing cocaine base in the form of "crack cocaine," a Schedule II Narcotic Drug Controlled Substance,

in violation of Title __21__ United States Code, Section __841(a)(1)__.

I further state that I am a __Special Agent, Drug Enforcement Administration__ and that this complaint is based on the following facts:

> See attached affidavit.

Continued on the attached sheet and made a part hereof:  __x__ Yes   ___ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

June 25, 2008                               at Chicago, Illinois
Date                                        City and State

Hon. Arlander Keys, U.S. Magistrate Judge        _____
Name & Title of Judicial Officer                 Signature of Judicial Officer

COUNTY OF COOK        )
                      )  SS
STATE OF ILLINOIS     )

## AFFIDAVIT

I, David Brazao, having been duly sworn, state as follows:

1. I am a Special Agent with the United States Drug Enforcement Administration, Chicago Field Division, where I have worked since 1999. Prior to my employment with the DEA, I worked for the U.S. Border Patrol starting in 1996. I am currently assigned to Enforcement Group 22, where my responsibilities include investigating violations of federal and state narcotics laws.

2. The information contained in this affidavit is based upon my own observations and discussions that I have had with other individuals – both law enforcement and non-law enforcement – as well as my training and experience. The following summary of certain facts is submitted for the limited purpose of establishing probable cause in connection with the complaint to which this affidavit is attached. I have set forth only the facts that I believe are necessary to establish probable cause in this matter. This is not a complete statement of all that I know about Daniel RODRIGUEZ or the events described in this affidavit. The telephone calls summarized below were all monitored by me or other law enforcement personnel. The descriptions below are not intended to be verbatim transcripts.

3. On June 24, 2008, I and other law enforcement personnel were contacted by a Cooperating Source of Information (herein referred to as CS). The CS told agents that Daniel RODRIGUEZ distributes large amounts of crack cocaine and powder cocaine through out the Chicagoland area. The CS further stated that he/she could purchase six and one half ounces of crack cocaine from RODRIGUEZ. The CS stated that he/she had conversations with Rodriguez about

cocaine and crack cocaine transactions. The CS is scheduled to report next month to serve a 25-month federal sentence (that had already been reduced for prior cooperation) based on drug trafficking and firearms convictions. The CS is cooperating in the hope of receiving an additional sentencing reduction.

4. On June 24, 2008, at approximately 1:54 p.m., under the direction of law enforcement personnel, the CS placed a recorded telephone call to RODRIGUEZ to arrange the purchase of six and one half ounces of crack cocaine. During the conversation, the CS told RODRIGUEZ that he/she needed four and a half ounces for one customer and another two ounces for another customer. RODRIGUEZ told the CS that he had to contact his source of supply (SOS) and would call the CS back.

5. At approximately 2:39 p.m., the CS was contacted by RODRIGUEZ. RODRIGUEZ told the CS that his SOS was not answering his phone because he was in school. RODRIGUEZ assured the CS that his SOS had the crack cocaine and would deliver it around 6:00 p.m. The CS told RODRIGUEZ that the money would be ready.

6. At approximately 2:54 p.m., RODRIGUEZ contacted the CS. RODRIGUEZ told the CS that the source called and he (SOS) had the cocaine. RODRIGUEZ further told the CS that he was meeting the SOS in forty-five minutes and then he (RODRIGUEZ) would be on his way to meet the CS. The CS told RODRIGUEZ he/she would be ready with the money and RODRIGUEZ said to be ready.

7. At approximately 3:05 p.m., RODRIGUEZ contacted the CS but the call failed. The CS then returned RODRIGUEZ's call. RODRIGUEZ asked the CS if he/she wanted it "hard." The CS understood this to mean that RODRIGUEZ was going to cook powder cocaine into crack cocaine

(cocaine base). The CS told RODRIGUEZ that he wanted crack and RODRIGUEZ said O.K.; he just wanted to make sure.

8. At approximately 4:50 p.m., the CS contacted RODRIGUEZ. RODRIGUEZ stated that his SOS was on his way. RODRIGUEZ asked the CS how much he/she was charging for the cocaine and the CS said $900 per ounce. RODRIGUEZ told the CS he would be there by 6:00 p.m. RODRIGUEZ further stated that the SOS was shot in the finger on the highway and people were after the SOS' family.

9. At approximately 5:40 p.m., law enforcement officers established surveillance on the CS at the White Castle restaurant, Route 53 and Briarcliff Road, Bolingbrook, Illinois. The CS drove with a DEA undercover agent (UC) in the UC's official undercover vehicle. Additionally, the CS was searched for weapons and contraband that yielded negative results.

10. At approximately 6:00 p.m., RODRIGUEZ arrived at the White Castle in his vehicle. A second individual was also in the car. The CS met with RODRIGUEZ and the other individual, who had a cast on his arm, inside the White Castle restaurant. RODRIGUEZ told the CS that he had it and they all exited the restaurant. The CS, RODRIGUEZ and the other individual then entered RODRIGUEZ' vehicle. The CS stated that, while in the vehicle, the other individual told the CS "It's exactly on." The CS understood this to mean that the cocaine weight was correct. This meeting was recorded.

11. At approximately 6:10 p.m., law enforcement officers arrested RODRIGUEZ and the other individual. On the back seat of RODRIGUEZ's car, agents found a brown paper bag containing a clear plastic bag, which in turn contained several large chunks of suspected crack cocaine. A field test was positive for cocaine and weighed 182 grams.

3

12.     At approximately 6:50 p.m., SA Brazao read RODRIGUEZ his Miranda warnings. RODRIGUEZ stated that he understood his rights and signed the Miranda waiver form. RODRIGUEZ then informed agents that he knew he was being investigated. He further stated, among other things, that he knew what he was getting into and he got caught. RODRIGUEZ then stated words to the effect that if you are going to play, you have to pay.


FURTHER AFFIANT SAYETH NOT.

_____
Special Agent David Brazao
U.S. Drug Enforcement Administration

Signed and Sworn before me
This 25th day of June, 2008.

_____
Arlander Keys
United States Magistrate Judge